TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
KAREN E. ESCALANTE (Cal. Bar No. 304686)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/3358
    Facsimile: (213) 894-6269
    E-mail:    scott.paetty@usdoj.gov
                karen.escalante@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>MARK A. LOMAN,<br><br>       Defendant. | No. 19-CR-695-DSF<br><br>TRIAL MEMORANDUM<br><br>Date:       August 17, 2021<br>Time:       8:30 a.m.<br>Location:   Courtroom of the<br>               Hon. Honorable Dale<br>               S. Fischer |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Karen E. Escalante, hereby submits its trial memorandum pursuant to Section D.1. of the Court's Criminal Standing Order for the trial set to begin as to defendant Mark A. Loman on August 17, 2021.

///

///

The government respectfully reserves the right to supplement its trial memorandum as may be appropriate.

Dated: August 10, 2021          Respectfully submitted,

                                TRACY L. WILKISON
                                Acting United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                    ___/s/_____
                                SCOTT PAETTY
                                KAREN E. ESCALANTE
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES...............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.     INTRODUCTION.................................................1

II.    FACTUAL SUMMARY OF THE GOVERNMENT'S CASE.....................1

III.   STATEMENT OF THE CHARGES AND ELEMENTS OF EACH CHARGE.........5

       A.    Counts One through Five: Securities Fraud, in
             violation of 18 U.S.C. §§ 1348(1), 2...................5

       B.    Count Six Through Ten:  15 U.S.C. §§ 78j(b), 78ff, 17
             C.F.R. § 240.10b-5, 18 U.S.C. § 2(b)..................6

IV.    ESTIMATED LENGTH OF GOVERNMENT'S CASE-IN-CHIEF..............7

       A.    Government's Witnesses................................7

V.     RELEVANT LEGAL AND EVIDENTIARY ISSUES.......................8

       A.    Stipulations.........................................8

       B.    OSI's Business Records...............................8

       C.    Testimony About OSI's Insider Trading Policy.........13

             1.    Testimony of OSI's General Counsel.............13

             2.    OSI's Insider Trading Policy...................14

             3.    Proposed Limiting Instruction Regarding OSI's
                   Insider Trading Policy.........................18

       D.    Supplemental Jury Instruction: Trading "On the Basis
             Of" Material Non-Public Information..................19

       E.    Expert Testimony.....................................20

       F.    Charts and Summaries.................................21

             1.    Summary Charts.................................21

             2.    Summary Witness................................23

       G.    Defendant's Statements...............................24

       H.    Cross-Examination of Defendant.......................26

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                PAGE

    I.   Character Witnesses.......................................27

    J.   Reciprocal Discovery and Affirmative Defenses............28

    K.   Forfeiture..............................................29

VI.  CONCLUSION..................................................29

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

**<u>CASES</u>**

<u>Age Group Ltd. v. Regal West Corp.</u>,
     No. C07-1303BHS, 2008 WL 4934039 (W.D. Wash. Nov. 14, 2008)...11

<u>Clark v. City of Los Angeles</u>,
     650 F.2d 1033 (9th Cir. 1981)................................10

<u>Ford Motor Co. v. Auto Supply Co.</u>,
     661 F.2d 1171 (8th Cir. 1981)................................12

<u>Hamling v. United States</u>,
     418 U.S. 87 (1974)...........................................27

<u>Ionian Corp. v. Country Mut. Ins. Co.</u>,
     No. 3:10-cv-0199-ST, 2011 WL 6070442 (D. Or. Dec. 2, 2011)....10

<u>LeBlanc v. Nortel Networks Corp.</u>,
     2006 U.S. Dist. LEXIS 17785 (M.D. Ga. March 30, 2006).......11

<u>Michelson v. United States</u>,
     335 U.S. 469 (1948)......................................27, 28

<u>Monotype Corp. PLC v. International Typeface Corp.</u>,
     43 F.3d 443 (9th Cir. 1994)..................................10

<u>Ohler v. United States</u>,
     529 U.S. 753 (2000)..........................................26

<u>Rogers v. Oregon Trail Elec. Consumers Co-op., Inc.</u>,
     No. 3:10-CV-1337-AC, 2012 WL 1635127 (D. Or. May 8, 2012).....10

<u>SEC v. Jasper</u>,
     678 F.3d 1116 (9th Cir. 2012)................................12

<u>See United States v. Anderson</u>,
     533 F.3d 623 (8th Cir. 2008).................................16

<u>Territory of Guam v. Ojeda</u>,
     758 F.2d 403 (9th Cir. 1985).................................24

<u>United States v. Aubrey</u>,
     800 F.3d 1115 (9th Cir. 2015)................................23

<u>United States v. Black</u>,
     767 F.2d 1334 (9th Cir. 1985)................................26

<u>United States v. Catabran</u>,
     836 F.2d 453 (9th Cir. 1988).................................10

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

<u>United States v. Childs</u>,
    5 F.3d 1328 (9th Cir. 1993)....................................12

<u>United States v. Collicott</u>,
    92 F.3d 973 (9th Cir. 1996)....................................25

<u>United States v. Cuozzo</u>,
    962 F.2d 945 (9th Cir. 1992)...................................26

<u>United States v. Fernandez</u>,
    839 F.2d 639 (9th Cir. 1988)...................................25

<u>United States v. Hedgcorth</u>,
    873 F.2d 1307 (9th Cir. 1989)..................................28

<u>United States v. Hegwood</u>,
    977 F.2d 492 (9th Cir. 1992)...................................28

<u>United States v. Lopez-Figueroa</u>,
    316 Fed. Appx. 548 (9th Cir. 2008)............................25

<u>United States v. Mendoza-Prado</u>,
    314 F.3d 1099 (9th Cir. 2002)..................................28

<u>United States v. Miranda-Uriarte</u>,
    649 F.2d 1345 (9th Cir. 1981)..................................26

<u>United States v. Ortega</u>,
    203 F.3d 675 (9th Cir. 2000)...................................25

<u>United States v. Rizk</u>,
     660 F.3d 1125 (9th Cir. 2011)............................22, 23

<u>United States v. Safavian</u>,
    435 F. Supp. 2d 36 (D.D.C. 2006).............................24

<u>United States v. Santana-Camacho</u>,
    931 F.2d 966 (1st Cir. 1991)...................................27

<u>United States v. Scales</u>,
     594 F.2d 558 (6th Cir. 1979)..................................23

<u>United States v. Scholl</u>,
    166 F.3d 964 (9th Cir. 1999)...................................28

<u>United States v. Shirley</u>,
     884 F.2d 1130 (9th Cir. 1989)................................23

<u>United States v. Siddiqui</u>,
    235 F.3d 1318 (11th Cir. 2000).................................25

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                    PAGE

United States v. Smith,
        155 F.3d 1051 (9th Cir. 1998)...............................19

United States v. Stein,
        2007 U.S. Dist. LEXIS 76201 (S.D.N.Y. Oct. 15, 2007)........11

United States v. Terry,
        2011 WL 2149361 (N.D. Ohio May 31, 2011)...................16

United States v. Tinghui Xie,
        942 F.3d 228 (5th Cir. 2019)...............................18

United States v. Ullrich,
        580 F.2d 765 (5th Cir. 1978)...............................13

United States v. Warren,
        25 F.3d 890 (9th Cir. 1994)................................24

United States v. Young,
        248 F.3d 260 (4th Cir. 2001)...............................28

Volterra Semiconductor Corp. v. Primarion, Inc.,
        No. C-08-05129 JCS, 2011 WL 4079223 (N.D. Cal. Sept. 12,
        2011)......................................................10

**RULES**

Fed. R. Crim. P. 16(a)(1)(G)......................................14

Fed. R. Crim. P. 16(b)........................................21, 28

Fed. R. Crim. P. 26.2.............................................28

Fed. R. Crim. P. 32.2(b)(1)(A)....................................29

Fed. R. Evid. 1006............................................21, 23

Fed. R. Evid. 106.................................................25

Fed. R. Evid. 403.............................................24, 27

Fed. R. Evid. 404(a)..............................................27

Fed. R. Evid. 405(a)..........................................27, 28

Fed. R. Evid. 702.................................................14

Fed. R. Evid. 703.................................................14

Fed. R. Evid. 705.................................................14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

Fed. R. Evid. 801(d)(2)(A).........................................9, 24

Fed. R. Evid. 803(6)...............................9, 10, 11, 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant MARK A. LOMAN ("defendant") has been charged with securities fraud and insider trading stemming from five trades that he placed between November 2015 and March 2016.  Jury trial is set for August 17, 2021, at 8:30 a.m.  The government estimates approximately three days for its case-in-chief, not including jury selection.  Pursuant to Section D.1. of the Court's Criminal Standing Order, the government has attempted to obtain defense counsel's agreement to the factual summary, statement of the charges, and time-estimate for cross-examination.  The government has also met and conferred with defense counsel on numerous legal and evidentiary issues as discussed more thoroughly below.

## II.  FACTUAL SUMMARY OF THE GOVERNMENT'S CASE

From approximately August 2006 until approximately December 2017, defendant was the Vice President and Corporate Controller of OSI Systems, Inc. ("OSI"), a publicly traded company based in Hawthorne, California.  OSI was founded by Deepak Chopra (no relation to the author who shares the same name) who remains the Chief Executive Officer, and it became a publicly traded company in 1997. Defendant was hired by, and reported directly to, OSI's Chief Financial Officer, Alan Edrick.  OSI's shares are traded on the National Association of Securities Dealers Automated Quotations Stock Market ("NASDAQ"), a national securities exchange, under the ticker symbol "OSIS".

OSI has three subsidiaries or divisions.  The Security Division, also known as Rapiscan, provides security screening products such as x-ray machines at airports, under the Rapiscan trade name.  The

Healthcare Division, also known as Spacelabs, designs and manufactures patient monitoring and diagnostic cardiology devices under the Spacelabs trade name.  The Optoelectronics and Manufacturing Division is an original equipment manufacturer which designs, develops, and manufactures component parts for other companies and is also known as OSI Optoelectronics or OSI Electronics.  As OSI's Corporate Controller (the parent company to these subsidiaries), defendant reported directly to the CFO, performed accounting functions with respect to the financial performance of each subsidiary and in so doing communicated regularly with the finance departments of each subsidiary and regularly received financial reports and updates for the subsidiaries and for OSI as a whole.

OSI's fiscal year begins on July 1st and ends on June 30th. Between October 1, 2015 and December 31, 2015, which constituted the second quarter of OSI's fiscal year 2016, and by virtue of his role as OSI's Corporate Controller, defendant received nonpublic information about OSI's financial performance.  The government has alleged that the nonpublic financial information defendant received included information that OSI and its subsidiaries were financially underperforming and that OSI was at risk of missing its revenue forecasts for the second quarter of fiscal year 2016.  The government has also alleged that this was nonpublic information that a reasonable investor would find to be material to the decision whether or not to trade in OSI stock.

On November 18, 2017, defendant shorted OSI stock.  Short selling is a mechanism by which an investor can place a bet that the stock price will decline over a certain period.

On December 28, 2015, during an OSI-initiated blackout period prohibiting certain OSI insiders, including defendant, from trading OSIS securities, defendant bought 100 OSIS put option contracts and sold, in two separate transactions, 150 OSIS call option contracts. Generally, buying put options in a stock is a mechanism by which an investor can place a bet that the stock price will decline over a certain period.  In addition, and in general, selling call options in a stock is a mechanism by which an investor can place a bet that the stock price will decline or not substantially increase over a certain period.

On January 27, 2016, OSI announced that its second quarter revenues decreased 23% as compared to the prior year, and OSI lowered its sales and earnings guidance.  The closing price of OSIS shares on January 27, 2016 was approximately $76.25.  The next day, the share price of OSIS shares declined sharply.  The closing price of OSIS shares on January 28, 2016 was approximately $52.02.

On February 1, 2016, defendant sold the 100 OSIS put option contracts he had bought in December 2015 and made a profit of approximately $314,000.  About two weeks later, on February 17, 2016, defendant bought 3,000 OSIS shares to cover the short position he had established in November 2015 and made a profit of approximately $90,263.  The call option contracts defendant had sold in December 2015 expired worthless on February 19, 2016, and April 15, 2016, thereby allowing defendant to keep the proceeds from his sale of the call option contracts, which resulted in a profit of approximately $42,015.

On February 15, 2016, defendant traveled to Kansas City, Missouri with OSI's CFO.  While in Kansas City, on February 16, 2016,

the CFO participated in a call with Morgan Stanley investment bankers
to discuss a draft letter of intent that OSI intended to send to
American Science and Engineering, Inc. ("AS&E"), which set forth
OSI's proposal to acquire AS&E.  At that time, AS&E was a publicly
traded company whose shares were traded on the NASDAQ exchange under
the ticker symbol "ASEI".

On February 16, 2016, defendant and the CFO ate lunch together
and then shared an Uber ride to the Kansas City International
Airport.  After exiting the Uber car, the CFO forwarded to defendant
an email attaching a draft letter of intent to be sent to AS&E and
setting forth OSI's proposal to acquire AS&E.  On or about February
17, 2016, OSI sent the letter of intent to AS&E.  The government has
alleged that OSI's proposed acquisition of AS&E was nonpublic
information that a reasonable investor would find to be material.

On March 3, 2016, defendant bought 10,000 shares of ASEI stock.
Also on March 3—after he made his order to purchase ASEI stock—
defendant received an email containing an itinerary for a departure
flight to Boston, Massachusetts on March 8, 2016, and a return flight
to Los Angeles, California on March 10, 2016.  Also on March 3,
defendant received an email setting forth an agenda for a due
diligence meeting between four AS&E executives and five OSI
executives, including himself.  Defendant attended the due diligence
meeting in Boston on March 9, 2016.

On June 21, 2016, OSI announced that it had entered into a
definitive agreement to acquire AS&E.  Afterwards, that same day,
during an OSI-initiated blackout period prohibiting OSI insiders,
including defendant, with access to material nonpublic information
from trading OSIS and ASEI securities, defendant sold the 10,000

4

shares of ASEI stock he had purchased in March 2016, and made a profit of approximately $120,900.

Defendant placed each of these trades through brokerage accounts in his own name.

### III.  STATEMENT OF THE CHARGES AND ELEMENTS OF EACH CHARGE

The government is proceeding to trial against defendant on the following charges:

### A.   Counts One through Five: Securities Fraud, in violation of 18 U.S.C. §§ 1348(1), 2

Counts 1 through 5 charge defendant with securities fraud in violation of 18 U.S.C. § 1348(1).

For defendant to be found guilty of securities fraud, the government must prove each of the following elements beyond a reasonable doubt:

First, defendant executed or attempted to execute a scheme or artifice to defraud.  Trading on the basis of material, nonpublic information by a corporate insider qualifies as an artifice or device to defraud for purposes of securities fraud;

Second, defendant did so knowingly and with intent to defraud, that is, the intent to deceive and cheat;

Third, the scheme or artifice to defraud was in connection with the purchase or sale of any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act or that was required to file reports under Section 15(d) of the Securities Exchange Act, as specifically delineated in Counts One through Five; and

Fourth, the scheme or artifice to defraud was material; that is, the act had a natural tendency to influence, or was capable of

influencing, the decision-maker or decision-making body to which it was directed.

**B.    Count Six Through Ten:  15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2(b)**

Counts 6 through 10 charge defendant with insider trading in violation of 15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5.

For defendant to be found guilty of insider trading, the government must prove each of the following elements beyond a reasonable doubt:

First, defendant willfully used a device or scheme to defraud someone.  Trading on the basis of material, nonpublic information by a corporate insider qualifies as an artifice or device to defraud for purposes of insider trading;

Second, defendant's acts were undertaken in connection with the purchase or sale of securities of OSI Systems, Inc., as delineated in Counts Six through Nine, or the purchase of securities of American Science & Engineering, Inc., as delineated in Count Ten;

Third, the defendant directly or indirectly used a national securities exchange in connection with these acts; and

Fourth, the defendant acted knowingly.

///

///

**IV.  ESTIMATED LENGTH OF GOVERNMENT'S CASE-IN-CHIEF**

**A.  Government's Witnesses**

The government presently intends to call the following six witnesses in its case-in-chief:

| Witness & Title | Anticipated Length of Direct Examination | Anticipated Length of Cross Examination |
|---|---|---|
| Deepak Chopra, Chief Executive Officer of OSI | 4 | 4 |
| Alan Edrick, Chief Financial Officer of OSI | 4 | 4 |
| Marie Kondzielski, Retired Federal Bureau of Investigation ("FBI") Special Agent | 1 | 1 |
| Alexander Scoufis, Principal Counsel for Financial Industry Regulatory Group ("FINRA"), Criminal Prosecution Assistance Group ("CPAG") | 1.5 | 1.5 |
| Victor Sze, General Counsel of OSI | 2 | 2 |
| Ajay Vashishat, Head of Mergers & Acquisitions and of Investor Relations | 2 | 2 |

**V.    RELEVANT LEGAL AND EVIDENTIARY ISSUES**

**A.    Stipulations**

The parties have met and conferred and reached agreement on a stipulation as to securities registration and trading on a national securities exchange, and the government proposes that the stipulation be read into the record at trial during the government's case-in-chief.  Specifically, the parties are prepared to stipulate that, at all times relevant to the charges in the Indictment, OSI and AS&E were issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act") and were required to file reports under Section 13 of the Exchange Act.  The parties are further prepared to stipulate that, all of the securities trades listed in the indictment were conducted on the National Association of Securities Dealers Automated Quotations Stock Market ("NASDAQ"), a national securities exchange.

The parties continue to meet and confer on an additional stipulation as to time zone conversions and conversions of time from military time to regular time.  Should the parties reach agreement on this stipulation, the government also proposes that the stipulation be read into the record.

**B.    OSI's Business Records**

The bulk of the evidence the government intends to introduce in its case-in-chief are emails that defendant and other executives at OSI exchanged related to negative OSI earnings reports and the subsequent acquisition of AS&E, as well as other documents such as financial reports of actual and forecasted performance, board presentations, press releases, and earnings call transcripts.  These emails and documents were provided by OSI and the government

8

subsequently produced these documents to defendant in discovery.
These documents are identified by OSI Bates-stamp prefixes.

The OSI securities fraud and insider trading counts (counts one through four and six through nine) center primarily on a series of financial reports and projections that were emailed to OSI executives, including defendant, regarding the performance of its three main divisions: Rapiscan, Spacelabs, and Optoelectronics. These documents and their transmittal emails reflect a growing concern among OSI executives that the actual revenue numbers being reported by the divisions showed that OSI would not meet earnings projections that were reflected in OSI sales guidance that had been provided to stock analysts and traders in the outside investment community.

The evidence related to the AS&E securities fraud and insider trading counts (counts five and ten) centers on defendant's awareness of OSI's proposed acquisition of AS&E prior to his purchase of AS&E stock, as shown by a trip he took with OSI's CFO and subsequent receipt, via email from the CFO, of a letter of intent related to the acquisition, as well as defendant's attendance at a separate due diligence trip related to the acquisition.

The government has produced its exhibits and an exhibit list, (which the government reserves the right to modify as necessary), to defense counsel and has also indicated to the defense its intention to introduce the evidence described above as business records under Rule 803(6) of the Federal Rules of Evidence, as well as, in certain circumstances, as statements of a party opponent under Rule 801(d)(2)(A). Defense counsel has informed the government that defendant will not object to the authenticity of documents produced

by OSI (and identifiable by an OSI Bates-stamp prefix), nor will defendant object to such documents as admissible business records. Defendant reserves the right to object to such documents on relevancy, undue prejudice, or hearsay (other than the business records exception) grounds.

The government submits that these records are admissible because they are business records that fall squarely within Federal Rule of Evidence 803(6).  Rule 803(6) allows for the admission of business records when they are: (1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the source of information nor method or circumstances of preparation indicating a lack of trustworthiness.  United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988); see also Clark v. City of Los Angeles, 650 F.2d 1033, 1036-37 (9th Cir. 1981).

Emails are not automatically admissible under Rule 803(6).  See Monotype Corp. PLC v. International Typeface Corp., 43 F.3d 443, 450 (9th Cir. 1994).  "However, the manner in which businesses utilize email has changed drastically in the eighteen years since Monotype was decided."  Rogers v. Oregon Trail Elec. Consumers Co-op., Inc., No. 3:10-CV-1337-AC, 2012 WL 1635127, at *8 (D. Or. May 8, 2012) (citing cases in which district courts in the Ninth Circuit have found emails to be admissible under the business records exception). See e.g., Ionian Corp. v. Country Mut. Ins. Co., No. 3:10-cv-0199-ST, 2011 WL 6070442, at *2, *18 (D. Or. Dec. 2, 2011) (admitting emails as business records); Volterra Semiconductor Corp. v. Primarion, Inc., No. C-08-05129 JCS, 2011 WL 4079223, at *7 (N.D. Cal. Sept. 12, 2011) ("[Plaintiff] laid a foundation at trial establishing that the

email was admissible under the business record exception to the hearsay rule."); Age Group Ltd. v. Regal West Corp., No. C07-1303BHS, 2008 WL 4934039, at *2-3 (W.D. Wash. Nov. 14, 2008) (excluding email evidence, but only because the proponent failed to lay the foundation to qualify the emails as business records)).

District courts in other circuits have also found emails admissible as business records.  See, e.g., United States v. Stein, 2007 U.S. Dist. LEXIS 76201, at *3-5 (S.D.N.Y. Oct. 15, 2007) (rejecting the contention that the proponent must "show[] that the e-mails at issue were created pursuant to established company procedures for the systematic or routine making of company records", and holding that, "regularity of making such records and of the business activity is all that is required"); LeBlanc v. Nortel Networks Corp., 2006 U.S. Dist. LEXIS 17785, at *16 (M.D. Ga. March 30, 2006) (finding emails likely to be admissible under the business records exception of Fed. R. Evid. 803(6)).

Here, emails discussing the financial performance of OSI's divisions (Rapiscan, Spacelabs, and Optoelectronics), the blackout periods governing trading in OSI stock by corporate executives (including defendant), and the potential acquisition of AS&E are admissible under 803(6) because, as the government will establish though testimony by several OSI executives, they were made at or near the time of the event, by persons with knowledge of the event, during the course and scope of a regular business activity (financial reporting), via a means of a communication (email) that the government will establish was regularly used to discuss OSI financial matters, including earnings reports and potential acquisitions.

In addition, courts have routinely held that financial reports made on a regular basis satisfy the business records requirements because they were "made at or near the time of the accounting review." See SEC v. Jasper, 678 F.3d 1116, 1122-23 (9th Cir. 2012) (not an abuse of discretion for district court to admit a restated financial report because it was a business record prepared by persons with personal knowledge, at or near the time of the events, who were just doing their ordinary jobs); Ford Motor Co. v. Auto Supply Co., 661 F.2d 1171, 1175-76 (8th Cir. 1981) (holding that annual Product Line Profitability Analyses ("PLPAs") were admissible under Rule 803(6) where "the PLPAs were kept in the course of regularly conducted business and that it was an annual practice to prepare these financial statements").

Here, documents such as financial reports of actual and forecasted performance (whether attached as an email or as a standalone document), board presentations, press releases, and earnings call transcripts, are also admissible as business records because, as the government will establish though testimony by several OSI executives, they were made at or near the time of the event, by persons with knowledge of the event, during the course and scope of a regularly conducted business activity.

Moreover, as the Ninth Circuit has recognized, courts have also held that documents can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy. United States v. Childs, 5 F.3d 1328, 1333 (9th Cir. 1993) (citing cases so holding from the First, Fifth, and Eleventh Circuits). Childs cites with approval the

reasoning in <u>United States v. Ullrich</u>, 580 F.2d 765 (5th Cir. 1978), in which the Fifth Circuit considered and rejected defendant's claim that documents were improperly admitted as business records because they were not prepared by the testifying witness.  <u>Childs</u>, 5 F.3d 1333-34.  The Ninth Circuit agreed with <u>Ullrich</u>'s reasoning that found it "obvious" that the documents were admissible as business records because although the documents had been furnished originally from other sources, it was established that they were kept in the regular course of business and had been effectively integrated into the records of the company through which they were being introduced at trial.  <u>Id.</u> at 1334 (citations omitted).

Here, nothing in the emails and documents that the government seeks to admit (whether generated by OSI or by other entity such as Carson Wagonlit (a travel agency), or Uber), indicates a lack of trustworthiness, either regarding the source of information or the method or circumstances of preparation.  Indeed, defendant does not challenge the authenticity of any of these exhibits.  Furthermore, testimony at trial from OSI executives will establish that these third-party documents were integrated into OSI business practices and thus were used by OSI in the regular course of OSI business.  Accordingly, the government submits that these third-party records should also be admitted as business records.

**C.    Testimony About OSI's Insider Trading Policy**

1.    <u>Testimony of OSI's General Counsel</u>

On July 27, 2021, the government provided defense counsel a draft witness list that identified OSI's General Counsel, Victor Sze, as a witness at trial.  For the reasons discussed below, the government does not believe that Mr. Sze's anticipated testimony is

"expert testimony" under Federal Rules of Evidence 702, 703, and/or 705 or is subject to the provisions of Federal Rule of Criminal Procedure 16(a)(1)(G).  Nevertheless, on August 3, via letter and as a courtesy, the government identified for the defense areas about which Mr. Sze is likely to testify on direct examination, including OSI's insider trading policy.  Defendant did not object to the government's position that Mr. Sze need not be qualified as an expert.  As stated in the government's letter, the government does not intend to elicit legal opinions from Mr. Sze or introduce evidence or argument that Mr. Loman's violation of the policy, on its own, means that he is guilty of the crimes alleged in the indictment. That said, defendant's violations of the policy are highly probative of his knowing and willful conduct with respect to the charged trades.

### 2.   OSI's Insider Trading Policy

As part of his role as General Counsel at OSI, Mr. Sze helped implement OSI's insider trading policy and was designated as a "Senior Advisor" under the terms of the policy, which authorized him to carry out duties related to the insider trading policy and to answer questions about it.  The government anticipates that Mr. Sze will provide percipient, background testimony at trial concerning the terms, purpose, and training programs related to the insider trading policy--which he played a significant role in implementing and administering-- and which was in effect at the time defendant made his trades.

Notably, the policy applied to "all individuals," including OSI's officers and directors, executive officers and other management personnel, full-time and part-time employees, salaried employees, and

temporary employees.  As relevant to this case, the policy restricted trading prior to public disclosure of inside information, speculative trading (including short selling), and trading during blackout periods.  With respect to speculative trading, the policy defined a short sale and conspicuously provided that, "**INSIDERS MAY NOT ENGAGE IN A SHORT SALE OR ANY EQUIVALENT TRANSACTION INVOLVING THE STOCK OF THE COMPANY, IS** [sic] **SUBSIDIARIES OR AFFILIATES**[.]"  The policy further discouraged hedging transactions involving OSI stock and required review of such transactions by the Senior Advisors.

In addition, directors, officers and executive officers and other members of senior management (including defendant), as well as certain insiders designated as having potential access to inside information because of their job responsibilities, were designated "Classified Insiders" under the policy.  Classified Insiders, including defendant, were required to obtain written authorization from a Senior Advisor prior to making any trade in OSI stock.  Moreover, Classified Insiders, including defendant, were not allowed to trade during "standing blackout periods" commencing on the 5th day before the end of each fiscal quarter and concluding at the end of the second business day after the date of a public announcement of the Company's earnings following such fiscal quarter.[1]  In addition to the standing blackout periods that applied to Classified Insiders, the policy also provided for the creation of additional, "special"

---

[1] Accordingly, during the second quarter of fiscal year 2016, Classified Insiders, including defendant, were subject to a standing blackout period beginning on or about December 27, 2015 (5 days before the close of the quarter on December 31, 2015), and ending on or about January 29, 2016 (two days following the announcement of OSI's earnings in a press release on January 27, 2016).

1  blackout periods during which trading by specified insiders,

2  including Classified Insiders, would be further restricted.

3       Defendant initially objected to the admissibility of the

4  policy's provisions on speculative trading and short-selling, and the

5  provisions concerning the blackout periods; however, defense counsel

6  has since, as stated at the pretrial conference, conceded the

7  relevance and probative value of the blackout period provisions, but

8  proposes that the provisions on speculative trading and short selling

9  be redacted.  As the government stated at the pretrial conference,

10 the government has made it clear to the defense that it does not

11 intend to argue that a violation of the insider trading policy is <u>per</u>

12 <u>se</u> a violation of the law.  However, the government submits that the

13 entire policy, which defendant acknowledged he was aware of and

14 agreed to abide by, is both relevant and highly probative of

15 defendant's knowledge, willfulness, and intent to defraud.  <u>See</u>

16 <u>United States v. Anderson</u>, 533 F.3d 623, 632 (8th Cir. 2008) (finding

17 company's corporate policy regarding insider trading was probative of

18 defendant's knowledge of insider trading laws and his intent to

19 defraud, and that the probative value of company's insider trading

20 policy was not substantially outweighed by danger of unfair

21 prejudice).[2]

22

23

---

24    [2] In meet and confer sessions, defense counsel relied on <u>United
   States v. Terry</u>, for the proposition that the insider trading policy

25 should be excluded.  2011 WL 2149361 (N.D. Ohio May 31, 2011).  But
   <u>Terry</u> is inapposite and actually supports the government's position.

26 The <u>Terry</u> court rejected the government's attempt to admit provisions
   of a judicial code pertaining to <u>ex parte</u> communications to prove

27 intent to defraud because, unlike in <u>Anderson</u>, the policy had "no
   parallels" in the law to the charged conduct.  <u>Id.</u>, at *3-4.  Here,

28 however, as in <u>Anderson</u>, the insider trading policy at issue "closely
   parallel[s]" the laws prohibiting insider trading.  <u>Id.</u>

First, with respect to both special and standing blackout periods, OSI's insider trading policy put insiders, including defendant, on notice that they were highly likely to possess material nonpublic information during these blackout periods.  Defendant's attestation that he would abide by OSI's insider trading policy coupled with his certifications that he completed training on the policy and his admission to the FBI in October 2017 that he was aware of the policy, evinces a knowing and willful disregard of securities and insider trading laws in light of his December 28, 2015 trades in OSI stock.

Second, the policy explicitly set forth that a short sale involved the sale of shares that a person does not own with the expectation that the price would go down, i.e., was essentially a bet against the company.  Defendant's disregard of OSI's unambiguous prohibition on short selling at a time when defendant was receiving negative earnings information by virtue of his role as OSI's Corporate Controller--who directly reported to the CFO and was one of OSI's core corporate finance team members--shows that when defendant executed the November 18, 2015 short sale, defendant was on notice that such a trade was problematic.  Moreover, defendant lied about the policy's prohibition against short selling when he was interviewed by the FBI in October 2017.  During that interview, defendant told the FBI that the policy did not prohibit short selling.  But the policy's prohibition on short selling could not have been more plain.  The government submits that defendant's lie was an attempt to hide his unlawful conduct which shows defendant's intent to deceive and cheat, and is further evidence of knowing and willful conduct.

Third, only Classified Insiders, including defendant, were subject to a heightened requirement that all trades in OSI stock be pre-cleared.  This limited group of Classified Insiders was subject to the pre-clearance requirement precisely because their job responsibilities made them more likely to possess material and nonpublic inside information, defined in the policy to include financial information such as revenues and information about potential acquisitions.  See United States v. Tinghui Xie, 942 F.3d 228, 239 (5th Cir. 2019) (affirming conviction for insider trading where defendant possessed the requisite intent because under the policy defendant "would have understood" that information concerning a potential merger was confidential and, not incidentally, because defendant knew that company policy also prevented trades during blackout periods).  Defendant's disregard of the preclearance requirement again shows that he knowingly and willfully violated securities and insider trading laws.

3.   Proposed Limiting Instruction Regarding OSI's Insider Trading Policy

After meeting and conferring, the parties agree that a limiting instruction regarding the policy should be given to the jury.  As of the date of this filing, however, the parties have not reached an agreement on the limiting instruction to be given.

Defendant has proposed the following limiting instruction:

"You have heard evidence about OSI company policies.  A violation of company policy is not a violation of the law or evidence of insider trading."

///

///

18

1

2      The government proposes the following limiting instruction:

3      You have heard evidence about OSI company policies.  A

4      violation of company policy, alone, is not a violation

5      of the law.  You may, however, consider whether the

6      defendant failed to comply with his company's policies

7      when evaluating whether the defendant acted willfully,

8      knowingly, and with the intent to defraud.

9      The government submits that defendant's proposed instruction

10 will be confusing to the jury because it does not include language

11 about what consideration the jurors may give the policy.

12 Accordingly, the government respectfully requests that the Court give

13 the government's proposed limiting instruction both during trial and

14 at the end of trial.

15     **D.    Supplemental Jury Instruction: Trading "On the Basis Of"**

16         **Material Non-Public Information**

17     The parties have agreed on a supplemental jury instruction to

18 address the "on the basis of" prong of insider trading and will

19 supplement the jury instructions accordingly.  The parties propose

20 that the Court instruct the jury as follows:

21     A person trades on the basis of material, non-public

22     information if the information is a significant factor

23     in his decision to buy or sell a security, but it need

24     not be the sole cause of the trade, and the defendant

25     used the information in formulating or consummating a

26     trade.

27 See United States v. Smith, 155 F.3d 1051, 1070 n.28 (9th Cir. 1998);

28 United States v. DeCinces, ECF No. 597, 12-CR-269-AG (C.D. Cal.).

1

### E.   Expert Testimony

2      The government gave notice, on January 7, 2020, that it intends

3 to offer at trial the expert testimony of Alexander G. Scoufis.  Mr.

4 Scoufis is presently Principal Counsel for the Criminal Prosecution

5 Assistance Group ("CPAG") of the Financial Industry Regulatory

6 Authority ("FINRA").  Mr. Scoufis is expected to provide background

7 testimony at trial concerning the nature, structure, and regulation

8 of the securities markets, and the roles of FINRA and the Securities

9 and Exchange Commission ("SEC") in such regulation.  He is also

10 expected to define various terms for the jury, including but not

11 limited to short selling, options trading, put options, call options,

12 and limit orders.

13      On Saturday, August 7, 2021, defendant provided the government

14 with notice that it may offer at trial the expert testimony of Laura

15 Stamm.  That same day, the government requested additional

16 information about the bases and scope of Ms. Stamm's testimony and

17 requested examples of Ms. Stamm's prior case work related to insider

18 trading allegations, such as prior sworn testimony or depositions.

19 Notwithstanding defendant's late disclosure, on Sunday, August 8,

20 2021, the government met and conferred with defense counsel and

21 requested, among other things, any summary charts defendant intended

22 to introduce through Ms. Stamm at trial.  Defense counsel responded

23 that Ms. Stamm will be testifying as a rebuttal witness and in

24 response to Mr. Scoufis' testimony and as a result, "the precise

25 scope of her anticipated testimony is not yet known."  The government

26 reserves its right to move to exclude the defendant's expert

27 testimony at trial on the grounds that the disclosure is late and

28

1  does not comport with defendant's discovery obligations under Rule

2  16(b)(1)(C) of the Federal Rules of Criminal Procedure.

3      **F.   Charts and Summaries**

4      This case involves a large volume of documents, including

5  voluminous financial and trading records.  To assist in the jury's

6  understanding of the case, the government intends to present charts

7  and summaries of the voluminous records in the case.

8      Charts and summaries of evidence are governed by Federal Rule of

9  Evidence 1006.  Rule 1006 provides that,

10      The proponent may use a summary, chart, or calculation to

11      prove the content of voluminous writings, recordings, or

12      photographs that cannot be conveniently examined in court.

13      The proponent must make the originals or duplicates

14      available for examination or copying, or both, by other

15      parties at a reasonable time and place.  And the court may

16      order the proponent to produce them in court.

17  Fed. R. Evid. 1006.

18      Here, the government has produced the underlying financial and

19  trading records to defendant in discovery, prepared summary charts of

20  this data, and provided them to defense counsel.

21          1.   Summary Charts

22      The summary charts that will aid the jury in understanding the

23  evidence in this case include charts depicting: (a) Bloomberg price

24  and volume data showing the closing price of OSIS stock and the

25  volume of shares traded each day between January 2, 2015 through

26  December 30, 2016; (b) OSIS price and volume analysis showing the

27  volume of OSIS stock being traded between October 1, 2015 and

28  February 3, 2016, together with the price of OSIS stock during this

21

time period, overlaid with the relevant trades, including the dates

of those trades; (c) OSIS price and volume analysis showing the

volume of OSIS stock being traded between January 4, 2016 and

February 3, 2016, together with the price of OSIS stock during this

time period; (d) defendant's trades from his Charles Schwab account

in OSIS securities between November 18, 2015 and February 17, 2016;

(e) Bloomberg price and volume data showing the closing price of ASEI

stock and the volume of shares traded each day between January 2,

2015 through September 9, 2016; (f) price and volume analysis showing

the volume of ASEI stock being traded between February 12, 2016 and

June 29, 2016, together with the price of ASEI stock during this time

period, overlaid with the relevant trades, including the dates of

those trades; (g) ASEI price and volume analysis showing the volume

of OSIS stock being traded between June 10, 2016 and June 29, 2016,

together with the price of ASEI stock during this time period; (h)

defendant's trades from his Charles Schwab account in ASEI securities

between March 3, 2016 and June 22, 2016; and

(i) calculations showing defendant's realized trading profits.  The

government has provided defendant with drafts of the aforementioned

charts, and the parties have met and conferred on the charts.  With

the exception of the charts depicting Bloomberg data, defense counsel

does not object to the admissibility of the aforementioned charts.

        A summary chart may be admitted as substantive evidence when the

proponent establishes that the underlying documents upon which the

summary is based are voluminous, admissible, and available for

inspection.  United States v. Johnson, 594 F.2d 1253, 1255-56 (9th

Cir. 1979); see also United States v. Rizk, 660 F.3d 1125, 1130 (9th

Cir. 2011); United States v. Aubrey, 800 F.3d 1115, 1130 (9th Cir.

2015).  Although the materials underlying the summary must be admissible, they need not themselves be admitted into evidence. Rizk, 660 F.3d at 1130—31.  In addition, the summary chart must be accurate, authentic, and properly introduced.  United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979) (affirming introduction of summary charts presenting an organization of undisputed objective evidence in terms of relevant counts of the indictment).  Any contention that the chart may contain inaccuracies or omissions goes to the weight of the evidence, not its admissibility.  Rizk, 660 F.3d at 1131 at n.2.

Federal Rule of Evidence 1006 does not require that a jury's examination of the underlying records be literally impossible before a summary or a chart may be utilized.  "All that is required for the rule to apply is that the underlying writings be 'voluminous' and that in court examination not be convenient."  Scales, 594 F.2d at 562.  All of the government's summary charts, including the charts summarizing Bloomberg data, meet the standard for admissibility under § 1006.

### 2.  Summary Witness

The government will seek to introduce summary testimony and charts through its designated expert, Mr. Scoufis.  A summary witness may properly testify about, and use a chart to summarize, evidence that is voluminous and complex.  The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed."  United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as

1  it helped jury organize and evaluate evidence; summary charts

2  properly admitted); accord United States v. Lemire, 720 F.2d 1327,

3  1348 (D.C. Cir. 1983).

4       **G.   Defendant's Statements**

5       The government previously moved to in limine to admit 11

6  excerpts of defendant's October 20, 2017 audio-recorded interview

7  with the FBI and to exclude the remaining portions as hearsay.  (Dkt.

8  25.)  The Court has granted the government's motion in part to allow

9  the government to introduce the interview excerpts identified as

10  Exhibits 78 through 88.  (Dkt. 36.)  Following the Court's order, the

11  government met and conferred with defense counsel regarding one

12  additional excerpt in which defendant acknowledges that he held a

13  Charles Schwab account and that he was the sole trader on the

14  account.  Defense counsel does not object to the inclusion of the

15  additional excerpt, which the government will seek to admit as

16  Exhibit 77.

17       In addition to statements defendant made to the FBI, the

18  government intends to introduce other statements made by defendant,

19  including statements defendant made to witnesses who will testify in

20  this case and statements defendant made in emails.  Under the Federal

21  Rules of Evidence, defendant's statements are admissible as a party

22  admission if offered against him.  Fed. R. Evid. 801(d)(2)(A); see

23  also United States v. Warren, 25 F.3d 890, 895 (9th Cir. 1994);

24  Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985)

25  (explaining that a statement need not be incriminating to be an

26  admission).  Courts routinely admit electronic evidence like emails

27  as party admissions in criminal cases.  See, e.g., United States v.

28  Safavian, 435 F. Supp. 2d 36, 43 (D.D.C. 2006) ("The statements

attributed directly to [defendant in e-mails] come in as admissions by a party opponent under" Fed. R. Evid. 801(d)(2)(A)); United States v. Siddiqui, 235 F.3d 1318, 1323 (11th Cir. 2000) ("Those [emails] sent by [defendant] constitute admissions of a party" pursuant to Fed. R. Evid. 801(d)(2)(A).)

Defendant may not, however, elicit his own prior statements from a witness because they are hearsay when offered by him.  United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements, even if they were made contemporaneously with other self-inculpatory statements, are inadmissible hearsay); see also United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988); United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Fed. R. Evid. 106 does not compel admission of otherwise inadmissible hearsay evidence); United States v. Lopez-Figueroa, 316 Fed. Appx. 548, 550 (9th Cir. 2008) (defendant could not introduce own statements redacted from confession by government).  By eliciting some of defendant's prior statements, the government does not thereby open the door to defendant to introduce other out-of-court statements.

Further, the "rule of completeness" set forth in Federal Rule of Evidence 106 applies where one party seeks to introduce a misleadingly tailored snippet of a statement that creates a misleading impression by being taken out of context.  Fed. R. Evid. 106.  It is proper, however, to admit segments of a statement without including everything, and adverse parties are not entitled to offer additional statements just because they are there and the proponent has not offered them.  Collicott, 92 F.3d at 983.  The rule of

25

1   completeness also does not apply to conversations that are not

2   written or recorded.  See Collicott, 92 F.3d at 983.

3       **H.   Cross-Examination of Defendant**

4       As of the date of this filing, defendant has not informed the

5   government whether he will testify.  If defendant chooses to testify,

6   the government should be permitted to fully cross-examine defendant

7   because a defendant who testifies at trial waives his right against

8   self-incrimination and subjects himself to cross-examination

9   concerning all matters reasonably related to the subject matter of

10  his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759

11  (2000) ("It has long been held that a defendant who takes the stand

12  in his own behalf cannot then claim the privilege against cross-

13  examination on matters reasonably related to the subject matter of

14  his direct examination" (internal citation and quotation marks

15  omitted)).

16      A defendant has no right to avoid cross-examination on matters

17  that call into question his credibility or any claim of innocence.

18  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir.

19  1981).  The scope of defendant's waiver is coextensive with the scope

20  of relevant cross-examination.  United States v. Cuozzo, 962 F.2d

21  945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341

22  (9th Cir. 1985) ("What the defendant actually discusses on direct

23  does not determine the extent of permissible cross-examination or his

24  waiver.  Rather, the inquiry is whether 'the government's questions

25  are reasonably related' to the subjects covered by the defendant's

26  testimony").

27  ///

28  ///

26

1

### I.   Character Witnesses

2          As of the date of this filing, defendant has not indicated

3   whether he will be calling character witnesses to testify on his

4   behalf.  Nevertheless, the Supreme Court has recognized that

5   character evidence -- particularly cumulative character evidence --

6   has weak probative value and great potential to result in confusion

7   of the issues and prejudice the jury.  Michelson v. United States,

8   335 U.S. 469, 480, 486 (1948).  The Supreme Court has thus given

9   trial courts wide discretion to limit the presentation of character

10  evidence.  Id. at 486.  Federal Rule of Evidence 403 also "gives the

11  district court broad discretion in excluding cumulative evidence."

12  See Hamling v. United States, 418 U.S. 87, 127 (1974).

13         Federal Rule of Evidence 404(a) governs the admissibility of

14  character evidence.  Rule 404(a) permits a defendant to introduce

15  evidence only of a "pertinent" trait of character.  A non-pertinent

16  or misleading character trait is not admissible.  See United States

17  v. Santana-Camacho, 931 F.2d 966, 967-68 (1st Cir. 1991) (testimony

18  of defendant's daughter purportedly showing that defendant was a good

19  family man inadmissible character evidence inasmuch as such character

20  traits were not pertinent to charged crime).  Moreover, Federal Rule

21  of Evidence 405(a) sets forth the sole methods for which character

22  evidence may be introduced.  When evidence of a character trait is

23  admissible, proof may be made in one of two ways: (1) by testimony as

24  to reputation, and (2) by testimony in the form of an opinion.  Fed.

25  R. Evid. 405(a).  Accordingly, character witnesses called by

26  defendant may not testify about specific acts demonstrating a

27  particular trait or other information acquired only by personal

28  observation and interaction with the defendant; the witness must

1 | summarize the reputation or opinion of the defendant as known in the

2 | community.  Michelson, 335 U.S. at 477; United States v. Hedgcorth,

3 | 873 F.2d 1307, 1313 (9th Cir. 1989).

4 | On cross-examination of a defendant's character witness,

5 | however, the government may inquire into specific instances of

6 | defendant's past conduct relevant to the character trait at issue.

7 | Fed. R. Evid. 405(a).  "[W]hen the defendant 'opens the door' to

8 | testimony about an issue by raising it for the first time himself, he

9 | cannot complain about subsequent government inquiry into that issue."

10 | United States v. Mendoza-Prado, 314 F.3d 1099, 1105 (9th Cir. 2002)

11 | (quoting United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.

12 | 1992)).  Such cross examination can be properly phrased in the form

13 | of "have you heard" or "did you know" questions regarding defendant's

14 | criminal conduct.  See United States v. Scholl, 166 F.3d 964, 974

15 | (9th Cir. 1999).

16 | **J.    Reciprocal Discovery and Affirmative Defenses**

17 | As of the date of this filing, defendant has not produced to the

18 | government any reciprocal discovery to which the government may be

19 | entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal

20 | Procedure.  Further, defendant has not provided the government with

21 | notice of any affirmative defenses.  Therefore, to the extent

22 | defendant attempts to introduce or use any documents (including

23 | emails, text messages, or other electronic evidence) at trial that he

24 | has not produced, or seeks to rely on an undisclosed affirmative

25 | defense, the government reserves the right to object and to request

26 | that the Court exclude defendant's undisclosed documents or

27 | affirmative defense.  See United States v. Young, 248 F.3d 260, 269-

28 | 70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape

evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

### K.   Forfeiture

The government will not be seeking to forfeit any specific items of property in this case.  However, the government may seek a money judgment of forfeiture, which will be sought after trial and will be decided by the Court, not the jury, after a conviction.  See Fed. R. Crim. P. 32.2(b)(1)(A) ("As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. . . If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay").

## VI.   CONCLUSION

The government respectfully requests leave to supplement this trial memorandum as may become appropriate during the course of trial.